HAIGHT, Jr., and others *v.* BIRD.[1]

*(District Court, S. D. New York.* February 1, 1886.)

1. COLLISION—STEAMER AND SAILING VESSEL—EAST RIVER NAVIGATION. EDDY OFF SIXTIETH STREET—CUSTOMARY COURSE.

A steamer coming down the East river, on the westerly side, collided, about off Sixtieth street, with a schooner beating slowly down with the ebb-tide. The general rule required the steamer to keep out of the schooner's way, but the defense was that there is an eddy on the westerly side at that place on the ebb-tide, extending nearly half way across the river, to Blackwell's island; that it is the custom of vessels beating down to tack at the edge of the eddy; that the schooner could not have been expected to come to the westward of the line of the eddy; and that the steamer could not go to the eastward of the schooner, as she expected her to follow the custom of tacking at the edge of the eddy. The schooner did not go so far within the eddy as that her heading was at all affected by it when the collision occurred. *Held*, that the custom must be construed as applying only to that part of the water where the opposite current of the eddy is actually sufficient to affect appreciably the motion of vessels going into it; that a sailing vessel has a right to keep her course till that limit is reached, and the schooner did not exceed this limit; that the steamer could have avoided the collision by going 100 or 150 feet nearer the New York shore, or by stopping and backing, and that she was therefore solely in fault for the collision.

2. SAME — EXCEPTION TO GENERAL RULE THAT SAILING VESSEL MUST KEEP COURSE—WHEN ALLOWED.

The exception to the general rule that a sailing vessel must keep her course cannot be allowed except when it is entirely clear, not only that by changing her course she would in fact have avoided the collision, but that, under the circumstances of the moment, as they appeared to the sailing vessel, that means of escape was so obvious to one of ordinary nautical judgment that it was clear negligence to omit it.

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

In Admiralty.

*Alexander & Ash,* for libelant.

*E. Henry Lacombe,* for respondent.

BROWN, J, The former suit of *Haight* against *The Mayor, etc.,* 24 Fed. Rep. 93, having been dismissed on the ground that the respondent in that case was not answerable for the faults of the steamer, this suit has been brought, for the same collision, to recover the damages against the master, who was at the time in charge of the navigation. Some additional testimony has been given, as respects the place of the collision in reference to the eddy in the East river between Sixtieth street and Blackwell's island in the ebb-tide. The steamer being bound to keep out of the way of the schooner, and having plenty of room to do so, the only possible defense is that the steamer had a right to count on the schooner's luffing up and tacking before she had come so far to the westward as the line of the steamer's course. It is urged that, according to the custom of navigation there, the schooner could not have been expected to come at all to the westward of the line of the eddy, and that she did so in this case; that the steamer could not have gone to the eastward of her, because the schooner was expected to tack at the edge of the eddy, and, by going to the eastward, the steamer would have run directly upon the schooner's natural course on tacking.

Upon further consideration of all the testimony, the new as well as the old, I am of the same opinion formerly expressed,—that the steamer was in fault, and the schooner not in fault. The undisputed fact that the schooner's course, although her movement was slow in a light wind, was not at all changed to the northward through any influence of the eddy up to the time of the collision, is conclusive evidence, to my mind, as I stated before, that she was not to any considerable distance within the eddy. The alleged custom for schooners to come about at the easterly edge of the eddy, resting, as it does, solely upon the necessity of avoiding the effects of the contrary movement within the eddy, must be construed as applying only to that part of the water where the opposite current of the eddy is actually sufficient to affect appreciably the motion of vessels going into it. A sailing vessel, in that narrow passage, has the undoubted right to keep her course until, at least, that limit is reached. The schooner in this case did not go beyond that limit. The steamer was bound to give her all this space. She had abundant room to pass to the westward. There was no difficulty in doing so, and she might with ease have avoided this collision, either by going 100 or 150 feet nearer to the New York shore, or by stopping and backing; one or both of which it was her duty to do. There was a further fault in the steamer in this case in that, shortly before reaching the line of the schooner's course, the steamer gave her two short blasts of her whistle. The proper meaning of this signal was that she would starboard her wheel, and go under the schooner's stern, and the schooner so understood

it, (Inspector's Rule 4,) instead of which the steamer kept on attempting to pass the schooner's bows.

It is undoubtedly true that a steamer, in laying her course so as to avoid a sailing vessel, has a right to assume that the latter will pursue the customary course of navigation in narrow channels. The steamer is bound to anticipate that the sailing vessel will tack, and in the customary manner, where there is a definite custom as respects particular dangers. A schooner, in following such a defined practice in tacking, may be regarded either as pursuing her proper course under the circumstances, or as falling within the exceptions of the twenty-fourth rule. But this principle cannot be availed of to excuse a steamer from fault that has abundant room at her own command, when she seeks to shorten the natural course of a sailing vessel in a narrow channel, where the precise margin of the customary course, like that of the border of an eddy, is itself somewhat indefinite, and varies with the different stages of the tide.

In the somewhat analogous case of *The Washington Irving*, Abb. Adm. 336, 338, BETTS, J., observes:

"The officers of the steam-boat had a right to act upon the presumption that the schooner would not be intentionally run in dangerous proximity to the shore. or to a point where she must become disabled or embarassed in tacking by a loss or change of the current. But if these impediments to her course were not palpable and inevitable. the steam-boat had no right to anticipate any variation of her course by the schooner, and was bound to regulate her proceedings so as to leave the schooner free to be navigated according to the judgment of her master and pilot. They were entitled to determine, at their discretion, the advantage or prudence of continuing her tack beyond the true tide, and even to what might seem to the officers of the steamer a dangerous proximity to the land. The law, under circumstances of uncertainty or doubt in respect to these particulars, imposed on the officers of the steam-boat the duty of taking timely precaution to secure the sailing vessel the free exercise of the discretion of her master in the choice of her course, and the expedients to be adopted in case he should encounter dangers in pursuing it."

These observations are applicable in the present case, and compel me to hold the steamer in fault.

I was at first disposed to regard it as the duty of the schooner to luff when she saw that the course of the steamer was irrevocably fixed to pass ahead of her. No exception to the general rule, that a sailing vessel must keep her course, can, however, be allowed except where it is entirely clear, not only that by changing her course she would in fact have avoided the collision, but that, under the circumstances of the moment as they appeared to the sailing vessel, escape by that means was so easy and obvious to a person of ordinary nautical judgment that it was clear negligence to omit it. That cannot be said in this case. The steamer, in fact, nearly passed clear of the schooner, being struck on her port quarter near the stern. Any luffing by the schooner would have been of doubtful use; and, upon a collision in that event, the schooner would have been left exposed to the clear

charge of fault; since it could not have been said with certainty that, if the schooner had kept her course, the steamer would not have had time before collision to run the few additional feet necessary to clear her.

The libelant is entitled to a decree, with costs, and a reference to compute the damages.